# IN THE OREGON TAX COURT

## EMERALD PEOPLE'S UTILITY DISTRICT
*v.*
## DEPARTMENT OF REVENUE
(TC 2197 and 2357)

Richard Larson, Johnson, Quinn, Clifton & Williams, P.C., Eugene, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, represented defendant.

Decision for defendant rendered January 23, 1986.

### CARL N. BYERS, Judge.

These cases concern the taxable value of the real and personal property utilized by plaintiff in providing electric power to the public. The cases are presented to the court on stipulation of the parties both as to facts and the issue before

the court. It is necessary to consider some background information before addressing the specific issue.

The creation of people's utility districts (PUD) is authorized by Article XI, section 12, of the Oregon Constitution. ORS chapter 261 constitutes the primary implementing legislation. ORS 261.007 acknowledges that the "intent and purpose" of the constitutional provisions authorizing the districts is to (1) develop the water and energy resources of the state and (2) to supply services for all uses and users. PUDs are to be distinguished from "private" utilities. Private utilities are deemed such because their stock, although traded publicly, is owned by private individuals and institutions as opposed to governmental ownership. Because they are privately owned and are accorded a degree of monopoly, the rates charged and the profits realized by private utilities are subject to regulation. The rates of PUDs are not subject to state regulation because the statute and constitution assume that they will provide service to their citizens at the lowest possible cost.

Because a PUD "may consist of an incorporated municipality or municipalities," the real and personal property owned by such a district is publicly owned. Except for ORS 261.050, the property of the district might be exempt from ad valorem taxation. However, ORS 261.050 provides:

"All property, real and personal, owned, used, operated or controlled by any people's utility district, in or for the production, transmission, distribution or furnishing of electric power or energy or electric service for or to the public, shall be assessed and taxed in the same manner and for the same purposes, and the district and the directors and officers thereof shall be subject to the same requirements, as are provided by law in respect to assessment and taxation of similar property owned, used, operated or controlled by private corporations or individuals for the purpose of furnishing electric power or energy or electric service to the public."

The parties have stipulated that the single issue before the court is the interpretation of this statute. To be more specific, what does the statute mean when it says that the property shall be assessed and taxed "in the same manner and for the same purposes"? Plaintiff contends that it means the property will have the same value as if it were owned by a

private utility. Defendant argues that it means only that the same statutes will be applied.

The above explanation does not fully expose the nature of the problem. Private utilities rarely, if ever, sell. That fact, plus the fact that they are subject to regulation, makes the determination of their true cash value relatively theoretical. While appraisers have developed methods to attempt to estimate the fair market value of the private utility's property, the methods leave some residual doubts. The very definition of true cash value or fair market value assumes the exchange of property between parties in the marketplace. When that exchange never takes place in an industry, the emphasis must be on "estimate" of market value.

In this case, the property in question was the subject of a sale in the marketplace. Plaintiff purchased the property from a private utility. The ultimate question presented is whether that sale can be considered in determining the value of the property since the market data approach is not used in determining the value of property of a private utility. Plaintiff complains that defendant would apply the market data approach to plaintiff's property but not to a private utility's property.

The stipulation of the parties specifies that:

"Should the Oregon Tax Court find that * * * in the same manner and for the same purposes * * * means that any or all appraisal methods may be applied to arrive at a true cash value, the true cash value for January 1, 1984, would be $17,000,000." (Stipulation, at 3, Lines 17-22.)

On the other hand, if the court finds that:

"ORS 261.050 restricts the department's methods of appraisal to something other than just independently finding true cash value, it would require that the department assess the EPUD * * * at the same cash value as if owned by a private electric utility." (Implying that the market data approach cannot be used.) (Stipulation, at 3-4, lines 23-26 and 1-3.)

The parties agree that there is virtually no legislative history to look to. Except for general principles governing the interpretation of statutes, the court is without any extrinsic aids.

It would appear that the intent of ORS 261.050 is to

render PUDs' property taxable just as privately owned property is taxable. To be assessed and taxed "in the same manner" means to use the same procedures, methods and appraisal theory. The statute also provides that the property shall be assessed and taxed "for the same purposes." Plaintiff acknowledges that since the procedures, methods and standards for taxation of privately owned utilities are governed by ORS chapter 308, particularly ORS 308.505 through 308.660,[1] the procedures, methods and standards of that chapter are to be applied to PUDs. (Plaintiff's brief, at 6-7).

■       As with other types of property subject to ad valorem taxation, the standard or goal to be achieved is to assess the property at its "true cash value" as of the assessment date ORS 308.540. While the statutes for "designated utilities" discuss in general terms certain aspects of the assessment process they do not specify the appraisal methods, approaches or theories which are applied in determining true cash value. ORS 308.545, which is labeled "Mode of valuing property," indicates that the department may inspect the property and take into consideration reports, statements, returns and other information. However, that section does not specify the appraisal methods to be used.

■       ORS 308.205, which defines "true cash value," does give some guidance as to the methods to be used in valuing property. That statute, and its accompanying administrative rules, applies to the subject property. OAR 150-308.205-(A)(2), specifies that real property shall be valued by the "market data approach, cost approach and income approach."

These three standard appraisal "approaches" are generally applied by appraisers in valuing taxable real and personal property for purposes of ad valorem taxation. As noted above, because private utilities are not exchanged in the marketplace, the market data approach cannot be used as such. However, generally private utilities are publicly held companies and their stocks do change hands in the open market.

"Accordingly, the stock and debt approach is used as a

---

[1] Utilities engaged in the business of telephone exchanges are also covered by ORS 308.705 through 308.730. Inasmuch as plaintiff is an electric power utility and not a telephone exchange those sections are not relevant.

substitute for the normal market data approach on the theory that the value of an entire corporate unit may be obtained from the sum of all market value of the liabilities of the corporation." *Burlington Northern et al v. Dept. of Rev.,* 8 OTR 19, 32 (1979).[2]

■ There are no statutory or theoretical rules excluding use of the market data approach. To the contrary, both statutes and theory prefer the approach whenever possible. Defendant asserts, without contradiction, that it would utilize comparable sales to assess and tax private utilities if it had sales data. This assertion is consistent with the direction of the statute to tax private utility property at its true cash value.

■ Not all appraisal methods are applicable to every property. For example, generally the income approach is not used in valuing industrial property because of the difficulty in identifying that portion of the income attributable to the taxable property. In the instant case, the stock and debt approach cannot be used because PUDs issue no stock. Thus, which appraisal methods or approaches can be used in any particular case depends upon the data available. *Pacific Power & Light Co. v. Dept. of Revenue,* 286 Or 529, 596 P2d 912 (1979). However, the goal in every case is true cash value.

The market data approach is generally not applied to private utilities because there are no comparable sales. The absence of comparable sales is not a rule but a fact. This fact does not govern or restrict the methods which can be used in appraising other properties. Plaintiff's position would require the court to find that the "same manner" of ORS 261.050 overrides the standards of ORS chapter 308 and attributes the facts of private utilities to PUDs. Such a result is not reasonable or consistent with the mandated goal of true cash value.

Accordingly, the court must reject the plaintiff's position. Plaintiff recognizes that it is asking the court to construe ORS 261.050 so as to provide for "something other than just independently finding true cash value." (Stipulation, at 3, line 25.) The statutes which govern the assessment of private utility property, particularly ORS 308.505 through 308.660, do

---

[2] For purpose of this case, the term "market data approach" refers to the method where sales of comparable properties are considered as direct evidence of the value of the subject property.

not contemplate a standard other than true cash value. Plaintiff's arguments appear to assume that use of the market data approach for plaintiff's property will result in a value in excess of true cash value. The stipulation states that:

"The true cash value of the property for assessment purposes in a EPUD ownership is greater than the allocated true cash value of the property assessed to PP&L in the prior year." (Stipulation, at 2, lines 7-9.)

Such a fact does not necessarily mean that the property has been assessed in excess of its true cash value. The allocated true cash value of the subject property while owned by PP&L was a reflection of a portion of the value of the whole PP&L system. That value may be lower than the plaintiff's system for reasons other than the overassessment of plaintiff's system.

The parties have stipulated that if "any or all appraisal methods may be applied to arrive at a true cash value" then the true cash value of the subject property is $17 million. (Stipulation, at 3, lines 20-22.) The court so finds. Plaintiff argues that the court should not approve the department's market value approach because the sale was not without compulsion and required major adjustments. (Plaintiff's brief at 13). However, the parties stipulated that if the court finds the market comparison approach *can* be used, the value is $17 million. By making such a determination the court is not approving the defendant's market data approach or determining that the sale to plaintiff is a comparable sale reflective of true cash value. Such a determination is a factual determination not before the court. By stipulation, the issue before the court is solely a legal issue. In resolving that issue, the court holds that the market data approach may be used in assessing and taxing the properties of PUDs in accordance with ORS 261.050.

Costs to neither party.